**KAPLAN FOX & KILSHEIMER LLP**
William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: 973-656-0222
Email: *wpinilis@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss
850 Third Avenue
New York, NY 10022
Telephone: 212-687-1980
Email: *jstrauss@kaplanfox.com*

*[Additional Counsel Appear on Signature Page]*

*Attorneys for Plaintiff Steven Owen*
 *and the Proposed Class*

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN OWEN, individually, and on behalf of all others similarly situated, | Civil Case No. 3:22-cv-02855 |
| Plaintiff, | <u>Class Action</u> |
| v. | **CLASS ACTION COMPLAINT** |
| NESTLE HEALTHCARE NUTRITION, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Steven Owen ("Plaintiff"), through his undersigned attorneys, brings this Class Action Complaint against Defendant Nestle HealthCare Nutrition, Inc. ("Nestle" or "Defendant"), individually, and on behalf of all others similarly situated. Plaintiff makes the following allegations based upon knowledge as to his own respective acts, and upon information and belief, as well as upon his attorneys' investigation, and alleges as follows:

## NATURE OF THE ACTION

1.      This is a nationwide class action on behalf of purchasers of Nestle's BOOST-brand Glucose Control over-the-counter drinks with the name "Glucose Control" (collectively, the "Product" or "Products"). The Products are sold as "nutritional drinks" specifically "designed for people with diabetes" to "help manage blood sugar." The Product name itself, Glucose Control, reaffirms its claimed purpose – to control glucose.

2.      Diabetes is a disease that affects over 37 million adults in the United States.[1] It occurs when blood glucose, also called blood sugar, is too high.[2] Insulin, a hormone made by the pancreas, helps glucose (the body's main source of energy) from food get into cells. Sometimes the body does not produce sufficient

---

[1] *See* https://www.cdc.gov/diabetes/library/spotlights/diabetes-facts-stats.html (last visited May 16, 2022).

[2] *See* https://www.niddk.nih.gov/health-information/diabetes/overview/what-is-diabetes (last visited May 16, 2022).

amounts of insulin or cannot otherwise properly process it.  Glucose then stays in the blood and does not reach cells.  Over time, having too much glucose in the blood can cause a variety of health problems such as heart disease, stroke, kidney disease, eye problems, dental disease, nerve damage, and foot problems.  Although diabetes has no cure, it can be controlled, mainly by managing blood sugar and other health factors.

3.     Due to the severity and prevalence of diabetes, companies like Nestle have capitalized on consumers' desire to prevent, treat, and mitigate the effects of diabetes.  Unfortunately for consumers, Defendant's representations that the Products control glucose are false and misleading.  Defendant's representations are reasonably understood by consumers to mean that the Products will control and manage blood glucose levels.  However, Defendant's own clinical trial concluded that the Products were associated with merely a lesser rise in glucose levels as compared to one other unidentified nutritional drink.  Shockingly, the Products do not control glucose at all, but rather only produce a slightly favorable response to glucose levels as compared to one other unidentified product.

4.     Critically, Nestle's marketing and labeling are tantamount to express and/or implied disease claims relating to the prevention and control of diabetes.  Such claims made on dietary supplements are prohibited as a matter of law and further render the claims misleading and deceptive.

5.     The Products are each labeled "Glucose Control" and prominently state in bold, capital font that they "HELP MANAGE BLOOD SUGAR" and/or that they are "DESIGNED FOR PEOPLE WITH DIABETES."

6.     Defendant's prominent and systematic mislabeling of the Products and its false and deceptive advertising form a pattern of unlawful and unfair business practices that harms the public and, if unstopped, could continue to lead to substantial harm.

7.     This is a proposed class action brought by Plaintiff, on behalf of classes of similarly situated individuals, against Defendant for breach of warranty, breach of implied warranty, unjust enrichment, and violations of New Jersey consumer protection laws.

## PARTIES

8.     **Plaintiff Steven Owen** is an individual consumer who, at all times material hereto, was a citizen of New Jersey.  Plaintiff, a diagnosed diabetic, purchased a 24-pack of BOOST Glucose Control in or around April 2022 from Amazon for $38.99.  In purchasing the Product, Plaintiff relied on Defendant's false, misleading, and deceptive marketing of the Products as a nutritional drink named "Glucose Control," designed to "HELP[] MANAGE BLOOD SUGAR."  Had Defendant disclosed that the Product Owen purchased was not able to actually

"manage blood sugar" or "control glucose", Plaintiff would not have purchased the Product.

9.       Indeed, in the weeks following his purchase of the Product, Plaintiff consumed most of the containers of the Product he purchased with the expectation that the Product would work as represented.  It did not.  Plaintiff believes that the Product did not "control" his Glucose or "manage his blood sugar" as he expected it would given the Product's labeling.

10.      Defendant's misrepresentations that the Products provide "Glucose Control," and "HELPS MANAGE BLOOD SUGAR" were immediate causes of Plaintiff's decisions to purchase one of the Products.  He would not have agreed to purchase one of the Products, would not have paid the full price, or would have sought materially different terms, had he known the truth.  Defendant's misrepresentations were substantial factors in Plaintiff's decision to purchase the Product.

11.      **Defendant Nestle HealthCare Nutrition, Inc.** ("Nestle" or "Defendant") is a corporation with its principal place of business in Bridgewater, New Jersey.  Based on information and belief, Defendant's marketing, product labeling decisions, manufacturing, distribution, sales, and the wrongful conduct alleged herein emanates from Defendant's headquarters in this District.

Furthermore, Defendant distributes and sells its Products throughout the United States, including in this District, through numerous stores and online retailers.

12.     At all relevant times, Defendant has marketed the Products in a consistent and uniform manner.  Defendant sells the Products in all 50 states on its website and through various distributors and retailers across the United States, including, but not limited to, Amazon, Walmart, Walgreens, Safeway, and CVS.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than the Defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  This Court has personal jurisdiction over Defendant because it is authorized to do business and conducts business in New Jersey, has specifically marketed and sold its products services in New Jersey, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state to render the exercise of jurisdiction by this Court permissible.

14.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred in

this District and Defendant is subject to personal jurisdiction to the federal court in this District.  Moreover, Defendant inhabits and/or may be found in this judicial district and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## FACTUAL ALLEGATIONS

**I.      The Products' Claims And Labeling**

15.     Defendant's BOOST Glucose Control Products state that they are "Glucose Control" products "DESIGNED FOR PEOPLE WITH DIABETES" and/or that they "HELP[] MANAGE BLOOD SUGAR."  These representations are prominently stated on the Products' labels, as shown below:

//

//

//

//

//

//

//

//

//

//

 

//

//

//

//

//

//




16.    All the Products are labeled "Glucose Control" and are otherwise substantially similar.  The Products come in a variety of sizes and are commonly sold in multi-pack paper containers. The multi-pack packaging contains the same representations, which are repeated on the individual bottles contained therein.

17.    Defendant further categorizes the Products as "diabetes-friendly" on the product page of its website:

//

//

//

**CATEGORY** ⌃

- ☑ Diabetes-Friendly
- ☐ Everyday Nutrition
- ☐ High Protein
- ☐ High Calorie
- ☐ Specialized Nutrition

## II.    The Products Make Unapproved Health Claims

18.    Defendant's Products, as marketed and labeled, are over the counter "nutritional drinks," and are thus "food" and "substances" under the Food Drug & Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. ("FDCA") and must comply with its labeling regulations, including those in 21 C.F.R. § 101. 27.[3]

19.    As Nestle's Products are not FDA approved drugs, as a matter of law, they may not bear explicit or implied disease claims – claims that either mention a disease (*e.g.* diabetes) or otherwise refer to identifiable characteristic signs or symptoms of a disease such that the intended use of the product to treat or prevent the disease may be inferred.

---

[3] New Jersey has expressly adopted the federal labeling requirements of the Act. N.J. Admin. Code § 8:21-1.3 ("The food labeling requirements of 21 CFR 101, 102, 104, and 105 are incorporated herein by reference.")

20.     Moreover, under 21 C.F.R. § 101.14(e), Defendant may not make health claims about the Products unless such claims are expressly reviewed and preauthorized by the FDA.  A product that makes unauthorized health claims is misbranded pursuant to 21 U.S.C. § 343(r).

21.     A health claim is "any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1).[4]

22.     Viewed in their totality, consumers could understand Defendant's representations, as outlined above and below, to mean that they can use the Products to effectively control glucose levels and manage blood sugar.  Thus, the following are impermissible health claims:

---

[4] Health Claims used on food products or dietary supplements to show that a food or food component may reduce the risk of a disease or a health-related condition must be reviewed and approved by FDA. "To be approved by the FDA as an authorized health claim, there must be significant scientific agreement (SSA) among qualified experts that the claim is supported by the totality of publicly available scientific evidence for a substance/disease relationship. The SSA standard is intended to be a strong standard that provides a high level of confidence in the validity of the substance/disease relationship." *See* https://www.fda.gov/food/food-labeling-nutrition/authorized-health-claims-meet-significant-scientific-agreement-ssa-standard (last visited May 16, 2022). Only a handful of such claims have been authorized by FDA, none of which pertain to the representations made by Nestle.

a. The name of the Products, "BOOST Glucose Control," is an implicit or express health claim because it purports to control a health-related condition, namely the inability to control glucose.

b. Defendant claims that the Products are "DESIGNED FOR PEOPLE WITH DIABETES." This is an implicit or express health claim because it denotes a relationship between the drink and diabetes.

c. "HELPS MANAGE BLOOD SUGAR" is an implicit or express health claim because it purports to control a health-related condition: the ability to manage blood sugar.

23. In fact, Metformin, a drug *that is often prescribed by a medical doctor* for diabetes, similarly claims that it helps lower blood sugar:

## How Metformin works & its benefits

Metformin (generic Glucophage) is a prescription medication that's used to treat Prediabetes and Type 2 Diabetes.

**Lowers blood glucose**

Metformin has been prescribed to patients for 60 years and is very well studied to lower blood glucose effectively.

**Better insulin sensitivity**

Your cells are able to absorb and use sugar more effectively, which reduces the amount of sugar in your blood.

//

//

//

**III.    The Products Deceptively Represent That They Control and Manage Blood Glucose**

24.     As alleged above, the Products purport to control blood glucose. It does this by the representations on the bottle seen by anyone who buys it. The name of the Products, "Boost Glucose Control" represents prominently that it controls glucose, which is reinforced by the separate prominent representation in capital font that it "HELPS MANAGE BLOOD SUGAR."

25.     Representations that the Products control glucose and "HELP[] MANAGE BLOOD SUGAR" conveys to a consumer that the Products affirmatively do something to control blood sugar: that whatever one's blood glucose is at the time they take the Products, drinking the Products will make it better.

26.     But this is false, as demonstrated by the clinical study that Nestle discusses on a part of its website:

> BOOST Glucose Control® Drink is clinically shown to produce a lower blood sugar response vs. a standard nutritional drink in people with type 2 diabetes. Not a substitute for medication.
>
> Incorporate BOOST Glucose Control® Drink into balanced diet as part of a medically supervised diabetes management plan.

27.     Upon information and belief, Nestle's claims that the Products control blood glucose is backed by a single clinical study that compared the glucose response of only 12 clinical trial participants with type 2 diabetes after drinking

- 13 -

"BOOST Glucose Control® Nutritional Drink," identified as "Diabetes Specific Oral Nutritional Supplement" (DS-ONS) and an unidentified "standard oral nutritional supplement" (ONS).[5]

28.     The purported study was done by the Nestle Nutrition Institute, which, upon information and belief is funded by and/or directly or indirectly affiliated with defendant Nestle.  On information and belief, it was not peer-reviewed or published in any medical journal.  It is unclear what, if any, standard scientific controls were adhered to by Nestle or the study participants.

29.     The study concluded that the rise in glucose levels was lower when the subjects drank the Products versus the ONS.  According to the Abstract Summary for the Products, the study concluded:



**Conclusions:**
- DS-ONS attenuated the overall blood glucose response and produced lower postprandial blood glucose peaks compared to a standard ONS.
- Specially formulated DS-ONS can be a useful tool to provide nutritional support as part of an overall diabetes management plan in individuals with T2D.

Nestlé Nutrition Institute

---

[5] The abstract may be found at:
https://www.nestlemedicalhub.com/sites/default/files/2021-08/Abstract_121_Glycemic_Response_of_Diabetes_Specific_ONS_in_Adults_with_T2D.pdf (last visited May 16, 2022).

30.     The conclusion of the study shows that DS-ONS, or the Products, still produce a blood glucose spike.  Thus, contrary to the Products' representations, the Products do not control glucose as stated on the label.

31.     Even if the conclusions of the small, non-double-blind study were true, Plaintiff and consumers could never know the unidentified ONS the Products were compared to, and how much less of a blood glucose response the Products comparatively caused.

32.     A lowered glucose response can be achieved by lowering the sugar content.  While Plaintiff could not know what unidentified ONS was compared against the Products, Nestle makes several drinks including Original BOOST, which contains 20 grams of sugar as compared with 4 grams of sugar for BOOST Glucose Control.  Even if this was the only difference between Original BOOST and BOOST Glucose Control, the latter would produce a lesser glucose spike.

33.     Plaintiff and class members bought the Products because they believed that they were scientifically proven to keep their blood glucose levels in control, the opposite of what Nestle's own testing shows.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff Steven Owen seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

35.     Plaintiff Steven Owen also seeks to represent a class defined as all persons in New Jersey who purchased the Products (the "Subclass").  Excluded from the Subclass are persons who made such purchases for purpose of resale.

36.     At this time, Plaintiff does not know the exact number of members of the Class or Subclass; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiff believes that Class and Subclass members are so numerous that joinder of all members is impracticable.  Plaintiff alleges that all acts of the Defendant pertinent to the common course of conduct alleged in this Complaint, including the development and dissemination of the deceptive marketing campaign for the Products discussed herein, emanated from Defendant's headquarters in the state of New Jersey.

37.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual Class and Subclass members include:

    a.     whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    b.     whether Defendant's conduct was unfair and/or deceptive;

    c.     whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this

Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class and Subclass;

d.      whether Defendant breached express and/or implied warranties to Plaintiff and the Class and Subclass; and

e.      whether Plaintiff and the Class and Subclass have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

38.     Plaintiff's claims are typical of those of the Class and Subclass because Plaintiff, like all members of the Class and Subclass, purchased, in a typical consumer setting, Defendant's product and Plaintiff sustained damages from Defendant's wrongful conduct.

39.     Plaintiff will fairly and adequately protect the interests of the Class and Subclass and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class and Subclass.

40.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the

Class and Subclass, thereby making appropriate equitable relief with respect to the Class and Subclass as a whole.

42. The prosecution of separate actions by members of the Class and Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and Subclass even where certain Class and Subclass members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
**Violation of the New Jersey Consumer Fraud Act, N.J.S. §§ 56:8-1, *et seq.***

43. Plaintiff repeats and realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44. Plaintiff brings this cause of action individually and on behalf of the Class, or in the alternative, the Subclass as defined above.

45. This Count arises under the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq*., and is brought on behalf of the Plaintiff and members of the Classes pursuant to §§ 56:8-19 and 56:8-2.12 of the Act.

46.     Section 56:8-2 provides, in relevant part: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . ."

47.     Plaintiff and other members of the Class and Subclass are consumers who purchased the Products from Defendant pursuant to a consumer transaction for personal use and are, therefore, subject to protection under the New Jersey Consumer Fraud Act, N.J.S. §§ 56:8-1, *et seq*.

48.     Defendant's acts, practices, misrepresentations, concealments, and omissions of material facts in connection with the manufacture, advertising, marketing, and sale of the Products are unlawful practices within the meaning of the New Jersey Consumer Fraud Act.

49.     Defendant engaged in unlawful practices by naming the Products "BOOST Glucose Control," and representing that the Products: "Control Glucose," "MANAGE BLOOD SUGAR," and were "DESIGNED FOR PEOPLE WITH DIABETES." These representations are not true.

50.     Furthermore, as described herein, Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular." Nestle did not receive FDA approval for such claims and the claims viewed in their totality implicitly or explicitly claim to mitigate and/or prevent disease.

51.     As a result of the use and employment by Defendant of the unlawful acts, Plaintiff and the other Class members have suffered an ascertainable loss of money or property and have been damaged thereby.

52.     Under N.J.S. §§ 56:8-2.11, 56:8-2.1,56:8-19 and 56:8-159, Plaintiff and the other Class members are entitled to compensatory damages, including treble damages, attorneys' fees, cost of suit, and declaratory relief.

## COUNT II
### Breach of Express Warranty

53.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

54.     Plaintiff brings this cause of action individually and on behalf of the Class, or in the alternative, the Subclass as defined above.

55.     Plaintiff, and each member of the Classes, formed a contract with Defendant at the time Plaintiff and each member of the Classes purchased the Products.

56.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the contract between Plaintiff and the members of the Class and Subclass and Defendant.

57.     Defendant also made claims that were implied disease and health claims under FDCA regulations, which likewise breaches the warranties made by Defendant which Plaintiff reasonably relied upon at the time of purchase.

58.     Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

59.     Defendant breached express warranties about the Products and their qualities because Defendant's Products' representations purports the Products control blood glucose when it does not do so. The name of the Products, "BOOST Glucose Control" represents prominently that it controls glucose, which is reinforced by the separate prominent representation that it "HELPS MANAGE BLOOD SUGAR."

60.     Plaintiff and each of the members of the Classes would not have purchased the Products had they known the Products did not "control glucose",

"HELP[] MANAGE BLOOD SUGAR," or were not "DESIGNED FOR PEOPLE WITH DIABETES."

61.     Plaintiff and members of the Classes relied upon the representations made by Defendant at the time of purchase and were deprived of the benefit of the bargain as a result of Defendant's conduct.

62.     As a result of Defendant's breach of warranty, Plaintiff and each of the members of the Classes have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

## COUNT III
### Breach of Implied Warranty of Merchantability

63.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

64.     Plaintiff brings this cause of action individually and on behalf of the Class, or in the alternative, the Subclass as defined above.

65.     Defendant marketed and sold the Products to function for the purpose of providing consumers products "DESIGNED FOR PEOPLE WITH DIABETES" that would "control glucose" and "HELP[] MANAGE BLOOD SUGAR." Plaintiff and Class and Subclass members purchased the Products for these reasons and the advertising and marketing stated above.

66.     Defendant's Products do not "control glucose" or "MANAGE

BLOOD SUGAR," and do not otherwise help "PEOPLE WITH DIABETES" and

thus render the Products unmerchantable and unfit for sale and use because they do

not do what they were intended to do, as described above.

67.     Defendant was aware of the Products' defects at the time it sold them

to Plaintiff and Class and Subclass members.  As a result of Defendant's breach of

warranties, Class and Subclass members have suffered damages because they have

purchased Products they would not have otherwise purchased and/or paid more for

Products than they would have otherwise paid.  Plaintiff and Class and Subclass

members are entitled to receive damages from Defendant in an amount to be

determined at trial.

**COUNT IV**
**Unjust Enrichment**
**(In The Alternative)**

68.     Plaintiff incorporates by reference and re-alleges each and every

allegation set forth above as though fully set forth herein.

69.     Plaintiff brings this cause of action individually and on behalf of the

Class, or in the alternative, the Subclass as defined above.

70.     Plaintiff and Class and Subclass members conferred benefits on

Defendant by purchasing the Products.

71.     Defendant has knowledge of such benefits.

72.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and Subclass members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant represented that the Products were designed for people with diabetes, could manage blood sugar, and could "control glucose." Furthermore, Defendant made these claims without FDA approval.

73.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and members of the Class and Subclass as follows:

a.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Steven Owen as representative of the Class and Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.      For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.      For injunctive relief enjoining the illegal acts detailed herein;

f.      For prejudgment interest on all amounts awarded;

g.      For an order of restitution and all other forms of equitable monetary relief;

h.      For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED:  May 16, 2022      By:  */s/ Joel B. Strauss*
                               Joel B. Strauss

850 Third Avenue
New York, NY 10022
Tel. 212-687-1980
Email: *jstrauss@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
William J. Pinilis
160 Morris Street
Morristown, NJ 07960

Tel. 973-656-0222
Email: *wpinilis@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King*
Matthew B. George*
Blair E. Reed*
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Tel. 415-772-4700
Email: *lking@kaplanfox.com*
      *mgeorge@kaplanfox.com*
      *breed@kaplanfox.com*

**KUZYK LAW, LLP**
Michael D. Braun*
1999 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067
Tel. 213-401-4100
Email: *mdb@kuzykclassactions.com*

**THE ROTHENBERG LAW FIRM LLP**
Ross B. Rothenberg
450 7th Avenue, 44th Floor
New York, NY 10123
Tel. 212-563-0100
Email: *ross@injurylawyer.com*

*Attorneys for Plaintiff Steven Owen and the Proposed Class*

*\*Pro hac vice* applications forthcoming